## WILSON v. LAMBETH et al.

### No. 43794.

Supreme Court of Missouri.

Division No. 2.

March 8, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied April 12, 1954.

Baker & Baker, Frazier Baker, Fulton, for appellants.

D. M. Cuthbertson, Fulton, for respondents.

WESTHUES, Commissioner.

This is a suit to quiet and determine title to two small tracts of land, one tract lying in the southeast part of the N. E. ¼ of the S. W. ¼, and the other, in the northwest part of the S. E. ¼ of the N. W. ¼, of Section 15, Township 45, Range 11, Callaway County, Missouri. The trial court entered a judgment in plaintiff's favor and the defendants appealed.

The dispute over the boundary line between the landowners is due to vague descriptions in various deeds by which the adjoining farms were conveyed. To make the matter less complicated and less confusing, we shall consider each tract separately.

Let us first consider the dispute concerning the land lying in the N. E. ¼ of the S. W. ¼. A plat was introduced in evidence and used by the attorneys in examining witnesses. This plat and the evidence of the surveyor who prepared it and other witnesses give us the following information: The land in dispute is situated in the east half of the quarter section. A small branch running north enters the east half of the quarter section about 4 chains west of the southeast corner of the quarter section, then runs in a northwesterly direction for some distance, then due north and a little to the east through the quarter section to the center of the section line, 7.77 chains east of the northeast corner of the quarter section which is also the center of Section 15. This plat also shows a road surveyed by John Cave in 1892, which road enters the quarter section about 5 chains north of the southeast corner, then runs in a northwesterly direction to a point about 5 chains south of the north line of the quarter section from which point it runs due north and along the branch above-mentioned. There is also a red line on the plat marked "Present County Road" which runs generally in the same direction and only a short distance south and west of the Cave survey. This road joins the Cave road at the branch and from thence north the Cave survey and the county road are one and follow the branch north. The land in dispute lies between the Cave road of 1892 and the branch. The surveyor testified that he found evidence along the branch that there had been a road following the branch all the way through the quarter section; that there was evidence of an old wire fence along this road and branch. With that picture in mind, let us look at the deeds by which the quarter section was conveyed. James F. Thomas entered the land in 1855. On November 1, 1870, Thomas conveyed to G. B. Todd, with other lands, that portion of the N. E. ¼ of the S. W. ¼ of Section 15 "lying and being East of a certain branch known to the parties, being ten acres more or less * * *." In 1889, Todd conveyed to J. C. Thomas, with other lands, all that portion of the above quarter section "lying and being east of a certain

branch known to the parties being 10 acres more or less * * *." Thomas, by this same description, conveyed this land to Margret Bagby in 1892. Up to this point, the deeds covered the land in dispute.

██ We now approach the confusion. In 1894, Margarite Bagby conveyed to L. G. Forbis land in the quarter section described as follows: "Four acres more or less which is cut off by the public road and joins L. G. Forbis on the East and known by Survey as follows Four acres off the East half of North East quarter of the South West quarter Section Fifteen (15), * * *." In 1895, Margarite Bagby conveyed to Nathan H. Harlan, with other lands she received from J. C. Thomas by the deed of 1892, "all that portion of the north East quarter of the south west quarter also five acres more or less off of the north east corner of the south west quarter of the south east quarter Those fractional portion of land all being cut off by a certain public road & branch known by the parties and being North & East of said road & branch * * *." The deed of Margarite Bagby of 1894, whereby she conveyed 4 acres to L. G. Forbis, throws confusion into the picture. There is no road which cuts off 4 acres. The land lying between the Cave road and the branch is about 11 acres. There are about 4 acres in the east half of the quarter section between the center line (running north and south) and the branch, but those 4 acres did not belong to Bagby. What 4 acres the parties had in mind is difficult to determine. Defendants say the 4 acres referred to the 11 acres lying between the Cave road and the branch. However, Margarite Bagby, a year later in 1895, conveyed that to Harlan. To add to the confusion, the 4 acres were carried forward by the same indefinite description in subsequent deeds. Note the deed (dated 1942) whereby the land in the S. W. ¼ of Section 15 was conveyed to the defendant Annie Lambeth: "the north half of the southwest quarter (except ten (10) acres off the east end); * * * four (4) acres off the east half of the northeast quarter of the southwest quarter; * * *." The description of the 4 acres is indefinite and would in all

events be a duplication of the land conveyed or that excepted from the deed. The north half of the S. W. ¼, except 10 acres, covered all of the land in the north half and obviously included the N. E. ¼ of the S. W. ¼. The trial court was justified in treating the conveyance as to the 4 acres too indefinite in description and, therefore, of no force and effect. Furthermore, the references to the branch established is as a definite and certain monument while the references to "the road" were indefinite for the reason that there was evidence of the existence of three roads. Before 1892, the road along the branch in the quarter section must have been used. In 1892, the Cave road was surveyed which was to some extent the same as the road later designated as the county road. Some witnesses doubted if the Cave road was ever used in the south portion of the quarter quarter section. One witness described the Cave road in that part as a "pig path." The land in dispute in this quarter quarter section was very rough and the witnesses knew very little about it. One witness referred to it as being so rough "a goat couldn't much more than go over it." That may account for the uncertainty as to the number of acres lying in the quarter section north and east of the branch. The branch and road were treated as one and the same boundary in the early deeds. Later, deeds substantially followed the above description as to the land in question. We need not consider these later deeds and the inconsistencies contained therein. If the branch is to be considered as the controlling monument establishing the boundary line, the trial court's finding was for the right party. The record before us supports the judgment.

It is difficult to determine the grounds on which the defendants want this court to reverse the judgment of the trial court as to the land in dispute lying in the northwest part of the S. E. ¼ of the N. W. ¼. In the defendants' chain of title, the land conveyed was usually referred to as 10 acres south and west of the public road and the chain of title of plaintiff, as 30 acres north and east of the public road. The decree of the trial court gave the defendants 11½ acres and the plaintiff 29.25 acres. The 11½ acres lie south and west of the road surveyed by Cave in 1892 which at that point followed nearby the old road which in turn followed the branch. The branch mentioned in the consideration of the dispute over the boundary line in the N. E. ¼ of the S. W. ¼ runs north through the south half of the S. E. ¼ of the N. W. ¼ and empties into Clifton Creek near the center of the quarter section. Clifton Creek which runs through the quarter section from east to west enters the quarter section about 2 chains north of the center of the east line, crosses the center line of the quarter section near the center thereof, and leaves the quarter section about 2½ chains south of the center of the western boundary of the quarter section. The three roads, which we mentioned as joining at the small branch in the northern part of the N. E. ¼ of the S. W. ¼, continue as one road following the branch to a place about 4 chains south of Clifton Creek where they separate. All three roads then run in a northwest direction crossing Clifton Creek at three points, all near the center of the quarter section. The present county road crosses Clifton Creek about 4 chains east of where the Cave road crosses it. The old road crosses the creek between the other two. The old road then runs in a winding fashion in a westerly direction to a point on the west line of the quarter section about 10 chains south of the northwest corner of the quarter section. The Cave road, after crossing the creek, runs in a straight line in a westerly direction and joins the old road at the quarter section line. The present county road, after crossing the creek, runs in a general northwesterly direction and connects with the other two roads a short distance south of the northwest corner of the quarter section. The evidence showed that the channel of Clifton Creek was changed about 1936. Before the change, the creek turned northwesterly at a point a short distance east of the center of the quarter section. It made a horseshoe bend in the northwestern part of the S. E. ¼ of the N. W. ¼ of Section 15. At that time the branch, often referred to, emptied into Clifton Creek at the west end of the horseshoe bend near the west line of the quarter sec-

tion. The land lying between the old channel and the new channel of Clifton Creek was claimed by defendants. Defendants contend they own all land south and west of the roadway marked "Present County Road." The court gave them all land lying south and west of the Cave road which at that point followed closely the old road and branch.

Plaintiff and defendants claim title through Bagby. In 1894, Bagby conveyed to L. G. Forbis, defendants' predecessor in title, "that portion cut off in the South East quarter of the North West quarter lying West of said Public road the parcel of land includes all that portion of land lying south and west of said county road." A year later, in 1895, Bagby conveyed to plaintiff's predecessor in title "Also thirty acres of the South East quarter of the North West quarter Section * * *. Those fractional portion of land all being cut off by a certain public road & branch known by the parties and being North & East of said road & branch * * *." The scriveners of subsequent deeds were very careless and often made abbreviations so that the descriptions are difficult to follow. It is evident that the road mentioned in the above deeds was not the road marked "Present County Road." The road intended was, no doubt, the road following the branch. The road and branch were both named as a boundary line and, therefore, the parties to the deeds evidently had in mind the road following the branch. In the court's decree, the old road was not followed but instead the road surveyed by Cave was made the boundary line. This road followed the old road and branch substantially, the difference being that the old road was a winding road and the Cave road ran in a straight line. Defendants say the trial court's finding that the Cave road was the line in this quarter section was inconsistent with its finding as to the boundary in the N. E. ¼ of the S. W. ¼ where the branch was established as the boundary line. We find that the court was justified in establishing the boundary along the Cave road because there was evidence that all parties owning the land had for many years considered the Cave road as the line in the S. E. ¼ of the N. W. ¼.

Defendants and plaintiff claim the land between the old and new channel of Clifton Creek by record title and also by adverse possession. There is evidence that defendants and their predecessors in title at various times when a dispute arose disclaimed ownership; that when corn was planted in a small space near the creek, the defendants gave a portion of the corn to plaintiff as rent. It would be difficult for this court to determine the issue of adverse possession. There was much confusion in the examination of witnesses. The attorneys used a plat in examining witnesses. Naturally, the attorneys referred to north as "up." The witnesses, due to the fact that the small branch ran north, referred to south as "up" and north as "down." Then, too, the witnesses would often be examined while the attorneys and witnesses were pointing and looking at the plat in evidence. The trial court was in a position to understand what was meant by "here", "there", "up here", and "down here", but this court is not so favored. Note an example, of which it is one of many in this record. Roy Forbis, a witness for the defendants, on cross-examination gave the following testimony:

"Q. I am referring to this on the map. There is a road and wire fence down this side. Do you have in your mind now where the road is there in that corner? A. Where it is or where it was?

"Q. Where it was. A. It comes down here something like that and cuts across the old channel of the creek and then it winds back around through here and comes back down up here where you come down the hill and you cross the new channel here.

"Q. That is where the old road used to be? A. And there is a branch, used to be a branch comes down on the south side of that road—still there.

"Q. That is not where the present road is, is it? A. No.

"Q. The present road is north of that? A. Yes.

"Q. Now, do you know who has been cultivating and using the land between those two roads in that little spot? A. Used to have what they called about half a acre.

"Q. Who did? A. My uncle Green.

"Q. Was that south of the old road? A. Yes.

"Q. Now then, north of the old road and south of the new road, who cultivated that in there? A. I always went to the Harlan place, we called it—the Wilson place, seemed to, up to the last several years."

An examination of the record has convinced us that the trial court properly and justly settled the boundary dispute between the parties.

■ The defendants, in their answer, asked the court to decree the now existing road to be a public road and to enjoin the plaintiff from asserting or claiming any right to said road. Defendants say that the trial court failed in its judgment to determine that issue. The record does not contain any evidence of anyone's claiming any interest in the roadway. The court certainly could not in this proceeding declare the road not to be a public road and since there was no evidence to dispute the right of the public to use the roadway, the trial court was justified in not deciding the question.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

All concur.